Scott C. Harris (*to seek admission pro hac vice*)
Whitfield Bryson & Mason LLP
900 W. Morgan Street
Raleigh, North Carolina 27603
(919) 600-5003
(919) 600-5035 (Fax)
scott@wbmllp.com

Edward H. Maginnis (*to seek admission pro hac vice*)
Maginnis Law, PLLC
4801 Glenwood Ave, Suite 310
Raleigh, North Carolina 27612
(919) 526-0450
(919) 882-8763 (fax)
emaginnis@maginnislaw.com

Michael L. Greenwald (*to seek admission pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, Florida 33487
(561) 826-5477
(561) 961-5684 (Fax)
mgreenwald@gdrlawfirm.com

Counsel for Plaintiff and the proposed class and subclass

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramsey J. Bergeron, *on behalf of himself and others similarly situated*, | Civil Action No.: |
| Plaintiff, | Jury Trial Demanded |
| v. | **CLASS ACTION COMPLAINT** |
| Anytime Fitness AZ Development Group, L.L.C. and L13cky Health L.L.C., d/b/a Anytime Fitness, LLC, | |
| Defendants. | |

1

Ramsey J. Bergeron ("Plaintiff"), individually and on behalf of others similarly situated, complains and alleges as follows based on personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters:

### Nature of this Action

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of Anytime Fitness AZ Development Group, L.L.C. and L13CKY Health L.L.C., d/b/a Anytime Fitness, LLC (collectively, "Defendants") in transmitting promotional SMS text messages *en masse* to Plaintiff's cellular telephone and the cellular telephones of thousands of other individuals across the country, without prior "express written consent" within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

### Jurisdiction and Venue

2. The Court has subject-matter jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district because Plaintiff's claims arose in substantial part in this district.

4. Defendants directed the unsolicited text messages received by Plaintiff into this district by transmitting the messages to a cellular telephone number that is assigned an area code (480) which corresponds to a location in this district.

5. Plaintiff received Defendants' unsolicited text messages on his cellular telephone in this district.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as a portion of the events giving rise to this action occurred in this district, and as Defendants transact business in this district.

### Parties

7. Plaintiff is, and at all relevant times was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Scottsdale, Arizona.

8. Anytime Fitness AZ Development Group, L.L.C. is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

9. Anytime Fitness AZ Development Group, L.L.C. is, and at all relevant times was, an Arizona Limited Liability Company doing business in Arizona.

10. L13cky Health, L.L.C. is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

11. L13cky Health, L.L.C. is, and at all relevant times was, an Arizona Limited Liability Company doing business in Arizona.

12. Defendants are the agents and/or alter egos of each other, and Defendants' corporate interests were amalgamated so that they in effect operated as one and the same entity.

13. Both Defendants operate under the tradename "Anytime Fitness" and do business as "Anytime Fitness."

14. Defendants each hold themselves out to the general public as "Anytime Fitness" as if each of the entities was operating as a single entity. It would be impossible for a member of the general public to distinguish between Defendants.

15. Upon information and belief, Defendants operated together in making decisions related to the use of text messages, including deciding on certain parameters for their use, determining the marketing and promotional strategies, and deciding upon the various vendors or third-party agents to utilize in the creation and sending of text messages.

16. Upon information and belief, Defendants shared in the proceeds gained through their use of unlawful text messages as alleged herein.

### The TCPA

17. In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices. The TCPA prohibits, *inter alia*, the use of automatic telephone dialing systems, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express

consent" of the party called.

18. With respect to calls or text messages that constitute "advertisements" or "telemarketing," as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

19. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls and receiving and addressing such calls and texts can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

20. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

21. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

22. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

23. Unlike more conventional advertisements, SMS message advertisements can cost their recipients money because wireless phone users must pay their wireless service providers for the ability to send or receive texts, regardless of whether the message is

---

[1] https://www.pewinternet.org/2010/09/02/cell-phones-and-american-adults/ (Apr. 15, 2019).

authorized.

24. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## Factual Allegations

25. Plaintiff is, and at all relevant times was, the subscriber to the cellular telephone number (480) ***-0633 (the "0633 Number").

26. The 0633 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

27. Plaintiff has been the sole subscriber and authorized user of the 0633 Number since approximately 2006.

28. In or about January 2019, Defendants transmitted, or caused to be transmitted, by themselves or through an intermediary or intermediaries, at least two SMS text message advertisements to the 0633 Number without Plaintiff's prior express written consent, including without limitation the messages depicted in the following screenshots extracted from Plaintiff's cellular device:




29.     The source of the SMS text messages sent by Defendants to the 0633 Number was "332-22," which is an SMS "short-code" telephone number leased by Defendants or Defendants' agent(s) or affiliate(s) and is used for operating Defendants' text message marketing programs.

30.     The hyperlinked URLs appearing in Defendants' text messages, including the above-depicted text messages sent to the 0633 Number and the numerous other unsolicited text messages sent to proposed class members, direct the recipients to webpages that are leased, owned, or controlled by, and are operated and maintained by, Defendants. Defendants make their membership services available to consumers for profit at such webpages.

31. After receiving the first text message from Defendants, Plaintiff texted "STOP," as directed by Defendants ("Text STOP to end"), so that Defendants would stop texting him.

32. Despite texting STOP, Defendants sent, or caused to be sent, a second promotional text message to Plaintiff's cellular telephone within days of the first message.

33. The text messages sent to Plaintiff and other consumers were not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

34. Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives an SMS text message sent to the 0633 Number, each unsolicited SMS text message that Defendants transmitted to the 0633 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion.

35. Plaintiff became distracted, frustrated, and aggravated as a result of receiving Defendants' SMS text messages.

36. Plaintiff is not, and never was, an Anytime Fitness customer.

37. Plaintiff never provided his cellular telephone number to Defendants.

38. Plaintiff never requested promotional materials or text messages from Defendants.

39. All telephone contact by Defendants or affiliates, subsidiaries, or agents of Defendants to Plaintiff at the 0633 Number occurred via a telephone system or other text messaging system or device that qualifies an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A) ("ATDS").

40. Specifically, Defendants utilized an ATDS to transmit all of their unsolicited text messages to the 0633 Number and to the cellular telephone numbers of the proposed class members because such messages were sent from Defendants' SMS short-code telephone number used to message consumers *en masse*; because Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of sending numerous texts simultaneously (all without human

intervention); and because the hardware and software used by Defendants to send such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers and to then send text messages to such numbers, *en masse*, in an automated fashion and without human intervention.

41. And indeed, Defendants transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that received and stored lists of telephone numbers and which then dialed such numbers automatically.

42. Defendants' ATDS has the specific capacity to store telephone numbers to be called or texted and to automatically dial or send text messages to such numbers without any human oversight or control.

43. Numerous consumers have received similar unsolicited mass marketing text messages sent by Defendants from short codes, as demonstrated by the following example complaints that consumers posted to Twitter:



8

> **Amanda** @manders992 · 21 Feb 2017
> Why the heck **did anytime fitness** call me and **how did** they get my **number** 😂 😂 I don't go to a gym, I go to McDonalds 😂😂😂

> **Niki** @nkeeezy · 2 Dec 2013
> I've never even gone to **Anytime Fitness how did** they even get my **number**

44. The complained of text messages to the 0633 Number and to the numbers of the proposed class members constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4) and/or advertisements as defined by 47 C.F.R. 64.1200(f)(1). This is because Defendants sent the messages in order to advertise and market the commercial availability of Anytime Fitness membership services to Plaintiff and the other unnamed class members for commercial profit.

45. Neither Plaintiff nor any of the proposed class members provided their "prior express written consent" or any other form of consent to allow Defendants or any affiliate, subsidiary, or agent of Defendants to transmit SMS text message advertisements to the 0633 Number or to any of the proposed class members' cellular telephone numbers by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

### Class Action Allegations

46. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class and subclass:

> Class: All persons and entities throughout the United States: (1) to whom Anytime Fitness AZ Development Group, L.L.C. or L13CKY Health L.L.C., d/b/a Anytime Fitness, LLC sent, or caused to be sent, at least one text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) from four years preceding the date of this complaint through the date of class certification.

> Subclass: All persons and entities throughout the United States: (1) to whom Anytime Fitness AZ Development Group, L.L.C. or L13CKY Health L.L.C., d/b/a Anytime Fitness, LLC sent, or caused to be sent, at least one text

message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) from four years preceding the date of this complaint through the date of class certification, (5) after the recipient texted "Stop".

47. Excluded from the Class and Subclass are Defendants, Defendants' officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

48. The proposed Class and Subclass are so numerous that, upon information and belief, joinder of all members is impracticable.

49. The exact number of members of the Class and Subclass is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

50. The proposed Class and Subclass are defined by reference to objective criteria.

51. In addition, and upon information and belief, the names, addresses, and cellular telephone numbers of all members of the Class and Subclass can be identified in business records maintained by Defendants and third parties.

52. Plaintiff's claims are typical of the claims of the members of the Class because all of their claims originate from the same conduct, practice and procedure on the part of Defendants, and Plaintiff possesses the same interests and has suffered the same injuries as each Class member.

53. Plaintiff and members of the Class received text messages sent using an ATDS, from or on behalf of Defendants, without consent, on their cellular telephone, in violation of 47 U.S.C. § 227.

54. Plaintiff's claims are typical of the claims of the members of the Subclass because all of the Subclass members' claims originate from the same conduct, practice and procedure on the part of Defendants, and Plaintiff possesses the same interests and has suffered the same injuries as each Subclass member.

55. Plaintiff and members of the Subclass received text messages sent using an ATDS, from or on behalf of Defendants, without consent, on their cellular telephone, after texting "Stop," in violation of 47 U.S.C. § 227.

56. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass and has retained counsel experienced and competent in class action litigation.

57. Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the Class and Subclass that he seeks to represent.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

59. Furthermore, as the damages suffered by individual members of the Class and Subclass may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class and Subclass to individually redress the wrongs done to them.

60. There will be little difficulty in the management of this action as a class action.

61. Issues of law and fact common to the members of the Class and Subclass predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the Class and Subclass.

62. Among the issues of law and fact common to the Class and Subclass are:
   a. Defendants' violations of the TCPA;
   b. Whether Defendants transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;
   c. Whether Defendants can meet their burden to show they obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;

    d. Whether such text messages were sent using an "automatic telephone dialing system" as defined by the TCPA;

    e. Defendants' practice of sending text messages to cellular telephone numbers after being instructed to stop doing so (Subclass); and

    f. The availability of statutory damages.

63. Absent a class action, Defendants' violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## Count I
## Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

64. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-63.

65. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system to send promotional or advertising telemarketing text messages to Plaintiff's cellular telephone number, without his prior express written consent.

66. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the Class and Subclass are entitled to damages in an amount to be proven at trial.

## Trial by Jury

Plaintiff is entitled to, and demands, a trial by jury.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a) Determining that this action is a proper class action;

    b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

    c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

    d) Adjudging that Defendants violated 47 U.S.C. § 227;

    e) Enjoining Defendants from continuing to send text messages to Plaintiff's cellular telephone number, and from continuing to send text messages to the

cellular telephone numbers of members of the proposed Class and Subclass without prior express written consent;

f) Awarding Plaintiff, the Class, and Subclass damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiff, the Class, and Subclass treble damages under 47 U.S.C. § 227(b)(3);

h) Awarding Plaintiff, the Class, and Subclass reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

Dated: May 2, 2019               Respectfully submitted,

*/s/ Michael L. Greenwald*
Michael L. Greenwald*
Greenwald Davidson Radbil PLLC

Scott C. Harris*
Whitfield Bryson & Mason LLP

Edward H. Maginnis*
Maginnis Law, PLLC

* to seek admission *pro hac vice*